# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE SHAFFER,<br>    Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH, NICHOLAS J.<br>BOBBS, ANTONIO CIUMMO, and JOHN<br>and/or JANE DOE,<br>    Defendants. | Civil Action No. 14-1674<br><br>Magistrate Judge Robert C. Mitchell/<br>Chief District Judge Joy Flowers Conti |

## REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

### I.    RECOMMENDATION

Plaintiff Dale Shaffer initiated this action against Defendants the City of Pittsburgh (the "City"), Nicholas J. Bobbs ("Bobbs"), Antonio Ciummo ("Cuimmo") and John and/or Jane Doe on December 11, 2014. With leave of Court, Plaintiff filed an amended complaint on April 14, 2015. Am. Compl. [ECF No. 19]. The named Defendants (City of Pittsburgh, Bobbs and Ciummo) filed a motion to dismiss Plaintiff's complaint on May 5, 2015. Mot. to Dismiss [ECF No. 20]. Plaintiff responded thereto on June 8, 2015 [ECF No. 23], and Defendants filed a reply on June 15, 2015 [ECF No. 24]. Therefore, the motion is fully briefed and ripe for disposition. For the following reasons, it is respectfully recommended that Defendants' motion to dismiss [ECF No. 20] be granted and Plaintiff's complaint be dismissed.

### II.    REPORT

    a.  Background

This case generally arises out of the alleged false arrest, imprisonment and prosecution of Plaintiff in connection with robberies committed in the Pittsburgh region. The facts alleged in the complaint and recounted here are taken as true for the purposes of this motion.

1

i. *PNC Bank Robbery*

On March 13, 2013, at approximately 2:45 p.m., a PNC Bank located at 2603 East Carson Street, Pittsburgh, Pennsylvania was robbed by an adult, Caucasian male. The bank robber allegedly slid a note to a female bank teller demanding that she give the robber all of her money. She handed the robber approximately $800.00 in cash. Two male bank employees witnessed parts of the events but neither was aware that a robbery occurred until after it had taken place. At the time this robbery occurred, Plaintiff alleges he was helping a friend install insulation in a house approximately 2.7 miles away from where the robbery occurred. The female bank teller was the only person that had direct contact with the robber and described him as a 160 pound, 5'10'' Caucasian with medium build, shoulder-length, curly, black hair, wore big dark sunglasses, was clean shaven and had braces on his teeth. At the time of the robbery, Plaintiff was not clean shaven and did not have braces. One of the male employees described the robber as a 5'8'' to 6'2'' Caucasian male, 20 to 30 years old, with dark, curly, shoulder-length hair and dark aviator sunglasses and having a slight build. This employee testified that he only glanced up at the robber and that the robber's face was covered by big dark sunglasses and his long hair. The second male employee described the actor as having long, dark and curly hair, and wearing dark sunglasses. He also said that the actor was wearing a red and brown hooded sweatshirt, but the surveillance video showed that the actor was wearing a light gray sweatshirt. This employee also testified that he was in the back of the bank and on the phone when the robbery occurred and only saw the actor out of the corner of his eye.

On March 14, 2013, the City released a still photograph of the alleged bank robber captured from the bank's surveillance cameras to the local media. That same day, Plaintiff's estranged mother, who suffers from numerous mental disorders, contacted police and informed

them that her son, the Plaintiff, matched the description of the bank robber. After placing this call, Plaintiff's mother contacted Plaintiff to inform him that she called police and identified him as a possible suspect in the robbery. Plaintiff then contacted the police and informed them he was willing to go to the appropriate police station to clear his name. At that time, Plaintiff was informed that he did not need to go to the station.

Despite Plaintiff's phone call, Defendants Ciummo and Bobbs, both City police officers, placed a photograph of Plaintiff in four photo-arrays, which displayed the same eight photographs in different order. The female bank employee was unable to identify Plaintiff in the photo-arrays. The two male bank employees identified Plaintiff as the robber in the photo-arrays. Additionally, while Plaintiff alleges that Officer Ciummo did not instruct the eyewitnesses that the actor may not be pictured in the arrays, the police report attached to the motion to dismiss indicated that the officers told the witnesses that the actor may or may not be in the photo array.

On March 26, 2013, Officers Bobbs, Ciummo and/or Doe(s) presented Plaintiff's parole officer, Richard Donnelly, with still photographs from the security footage from the bank showing the actor and asked him if the person shown was Plaintiff. Plaintiff's parole officer identified the actor in the photographs as Plaintiff. Plaintiff argues that his parole officer was only presented with one person as the possible suspect to a crime that he had not witnessed and that the security footage presented to him was of such poor quality that no reliable identification could be made.

Officer Bobbs' affidavit of probable cause authored March 27, 2013 stated that the reasons he knew Plaintiff committed the crime were the identifications by the two male bank employees and the female bank employee's description. A warrant for Plaintiff's arrest in

connection with the PNC Bank robbery was issued on March 27, 2013. Plaintiff argues that Officer Bobbs intentionally or with reckless disregard for the truth omitted the following facts that any reasonable person would know include: (1) the female employee initially described the actor as having braces on his teeth and the Plaintiff has never had braces on his teeth; (2) the female employee, the only person who had direct contact and a clear view of the robber's face, was unable to identify the Plaintiff in the photo-array; (3) the two male employees, the witnesses who identified the Plaintiff in the photo-array, only viewed the actor for seconds at most and did not have direct contact with the actor; and (4) the actor wore large sunglasses during the commission of the crime which covered a large part of his face, and his face was also partially covered by his long hair making identification extremely difficult.

That same day, Plaintiff's parole officer contacted Plaintiff and requested that Plaintiff come to his office. Plaintiff complied and was placed under arrest by City police officers at his parole officer's office. Officer Bobbs charged Plaintiff with two counts of robbery related to the March 13, 2013 PNC Bank robbery. After Plaintiff's arrest, he alleges that Officer Bobbs refused to inform him of when and where the crime was committed and Plaintiff was unable to provide an immediate alibi. At all times, Plaintiff informed Defendants of his innocence. Plaintiff was then detained at Allegheny County Jail ("ACJ").

### ii. "Games N'At" Burglaries

On March 17, 2013, "Games N'At," a business located at 2010 Josephine Street, Pittsburgh, Pennsylvania was burglarized. The actor stole assorted video game equipment from the business establishment. Surveillance video at "Games N'At" showed that the actor of the burglary appeared to be the same person who robbed PNC Bank on March 13, 2013. Plaintiff's photograph was again placed into a photo-array and shown to an alleged eyewitness to the

4

burglary.[1]  Plaintiff argues that the photo-array was unusually suggestive because he is one of only two people with long hair, and the other long-haired person appears to be of Latino, and not Caucasian, descent.  Plaintiff's parole officer was shown still photographs from the surveillance video of the "Games N'At" burglary, and he again identified Plaintiff as the actor.  Thus, Plaintiff argues that Donnelly was presented with a one-person photo-array relating to a crime that he did not witness.  Plaintiff was arrested and charged with the burglary of "Games N'At" while incarcerated at ACJ.

On June 18, 2013, "Games N'At" was burglarized a second time and the video surveillance showed that it appeared to be the same person who burglarized the business on March 17, 2013 and robbed PNC Bank on March 13, 2013.  Because Plaintiff was detained at ACJ at the time of the second burglary and could not have committed that crime, Plaintiff's charges stemming from the March 17, 2013 burglary of "Games N'At" were *nolle prossed*.[2]

### iii. Trial for the PNC Bank Robbery

Plaintiff was tried for the March 13, 2013 PNC Bank robbery from February 3, 2014 through February 4, 2014 and the jury returned a not guilty verdict.  Pending his trial, Plaintiff was detained at ACJ from March 27, 2013 until February 4, 2014, or 314 days.

### iv. Civil Rights Complaint

Plaintiff filed the instant action against the City and the Officers and Supervisors involved alleging that there was a failure to properly train, supervise and control the officers on

---

[1]  This alleged eyewitness later became a co-defendant in the case after stolen items from the burglary were found in his possession.

[2]  It is unclear from the complaint whether the first burglary of "Games N'At" was also *nolle prossed*, but because the Plaintiff focuses his alleged constitutional violations on the charges and prosecution of the PNC Bank robbery, the Court will limit its discussion to the PNC Bank robbery.

the proper standards for the investigation of crimes under these circumstances. Plaintiff also alleges that this failure to train was pervasive and has led to numerous unlawful arrests, malicious prosecutions and/or constitutional right deprivations by the City of Pittsburgh. Plaintiff also alleges that the supervisory leadership of the Pittsburgh Police Department participated in the unlawful actions and acquiesced and supported the conduct of the Defendant officers. Plaintiff brings the following claims against all of the Defendants: malicious prosecution, false arrest and false imprisonment; brings claims for conspiracy and intentional infliction of emotional distress against the individual defendants; and brings a municipal liability claim against the City.

*v. Motion to Dismiss*

Defendants filed a joint motion to dismiss the claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Plaintiff's complaint fails to establish that probable cause did not exist at the time of his arrest, and therefore his claims for malicious prosecution, false arrest and false imprisonment must be dismissed. Next, Defendants argue that Plaintiff's conspiracy claim must be dismissed because Plaintiff failed to allege an express illicit agreement to violate Plaintiff's constitutional rights. Additionally, Defendants argue that Plaintiff's claim for intentional infliction of emotional distress fails because Plaintiff has failed to allege sufficiently outrageous behavior. Lastly, Defendants argue that Plaintiff's municipal liability claim against the City must be dismissed for failure to allege a municipal policy or custom that violated his constitutional rights.

b. Standard of Review

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to

pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it may consider documents <u>integral to or explicitly relied upon</u> in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added). Accordingly, the Court may take into consideration the police reports and the affidavit of probable cause attached to the motion to dismiss without converting Defendants' motion into one for summary judgment in making this recommendation, as the authenticity of those documents are undisputed and based on Plaintiff's claims.

    c. <u>Discussion</u>

Plaintiff brings his various claims under 42 U.S.C. § 1983 ("Section 1983") which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. While Section 1983 "provides remedies for deprivations of rights established in the Constitution or federal laws[,] [i]t does not, by its own terms, create substantive rights." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979)). Thus, a plaintiff seeking redress under Section 1983 must allege sufficient facts showing that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Id.* at 423.

Because Defendants move to dismiss each claim against them, the Court will discuss each claim and Defendants' argument separately.

> i. *False Arrest, False Imprisonment and Malicious Prosecution*

Plaintiff brings claims for false arrest, false imprisonment and malicious prosecution, all of which require a showing that Defendants lacked probable cause to arrest, imprison or prosecute Plaintiff.[3] Defendants argue that probable cause existed at the time of Plaintiff's arrest and therefore these claims should be dismissed.

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, provides the right that citizens be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. The Fourth Amendment prohibits the arrest, imprisonment or prosecution of a citizen "except upon probable cause." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachistou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)). While the question of probable cause in a Section 1983 suit is a jury determination, the court may conclude that probable cause existed as a matter of law if any reasonable reading of the complaint would not support a contrary finding. *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (citations omitted).

Probable cause requires more than "mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt" before effectuating an arrest. *Id.* at 483 (citations omitted). Probable cause to arrest a citizen "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a

---

[3] *See Johnson v. Bingnear*, 441 F. App'x 848, 851 (3d Cir. 2011) (probable cause is an element to prove in false arrest and malicious prosecution claims); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (probable cause is element of false imprisonment).

reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (quoting *Orsatti*, 71 F.3d at 483).

When an arrest is made pursuant to a warrant, probable cause generally exists when the arrest warrant meets the requirements of the Fourth Amendment. *Kis v. Cnty. of Schuylkill*, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). Where, as here, the Plaintiff challenges the sufficiency of an affidavit for probable cause incident to an arrest warrant based upon the officer-affiant's failure to investigate and include in the affidavit of probable cause potentially exculpatory evidence such as an alibi, courts should consider the distinction between "fundamental" evidence – that which an officer must consider – and "interpretative" evidence – that which "could be subject to a variety of interpretations." *Kelly v. Jones*, No. 14-CV-4317, 2015 WL 1759213, at *5 (E.D.Pa. Apr. 17, 2015) (citing *Romero v. Fay*, 45 F.3d 1472, 1477 (10th Cir. 1995)). Fundamental evidence is objective evidence from an official source which would completely exonerate the suspect. *Id*.

Here, while Plaintiff was found not guilty of the PNC Bank robbery, the officers had probable cause to effectuate his arrest in the first instance. An officer is required to consider and include in an affidavit of probable cause for an arrest warrant any fundamental exculpatory evidence. Plaintiff claims the affiant-officer should have included in the application for probable cause that the female bank employee described the actor as having braces on his teeth, that Plaintiff never had braces on his teeth, that the female employee was unable to identify Plaintiff as the actor in the photo array, and that the two male employees who identified Plaintiff as the actor in the photo array did not have direct contact with the actor and the actor wore large sunglasses and covered his face with his long hair. These facts from witness identification are all open for interpretation and do not provide a fundamental alibi, such as incarceration, at the time

the robbery took place. The facts known to the officers at the time the arrest warrant was applied for was that PNC Bank had been robbed on March 13, 2013, and the suspect was a Caucasian male between 20 and 30 years old with a medium build and long dark curly hair. Additionally, Plaintiff's mother identified Plaintiff from a surveillance photo released to the press as the actor who committed the PNC Bank robbery. Further, two eyewitnesses identified Plaintiff from the photo array as the actor who committed the robbery, and Plaintiff's parole officer corroborated his identification in the photo array and the surveillance photographs. While the fact that Plaintiff contacted the police and tried to exonerate himself after his mother informed him that she identified him to police as the suspect and he provided an alibi for his whereabouts at the time of the robbery tend to provide a defense to the robbery – this does not negate the fact that two bank employees identified him in the photo array and his parole officer and mother corroborated his identity. Additionally, Plaintiff's own alibi placed him at a friend's house less than three miles away from the scene of the crime at the time the robbery was committed. While the entirety of the police investigation is far from laudable in light of all of the circumstances, the constitution only protects citizens from arrest without probable cause. The officers here were reasonable in believing that Plaintiff robbed PNC Bank from the eyewitness identifications, the identification of Plaintiff in surveillance photos by his mother and the corroboration of his identity by his parole officer, such that they had the probable cause necessary for his arrest.

While this Court is not restricted by the state court's finding of probable cause in issuing an arrest warrant, this Court finds that the facts and circumstances were sufficient to warrant a reasonable person to believe that Plaintiff committed the offense. The facts which Plaintiff alleges would have exonerated him or tend to disprove probable cause are not objective evidence from an official source tending to completely exonerate him but rather are subject to a variety of

11

interpretations. If for example, Plaintiff was arrested for the second burglary of "Games N'At" which occurred when he was incarcerated, Plaintiff would have a strong argument that Defendants' failure to include this fundamental evidence in the affidavit of probable cause negated any probable cause that Defendants claimed to have to arrest Plaintiff. That, however, is not the case, as Plaintiff was not arrested or charged with the second "Games N'At" burglary. While the actor of the PNC Bank robbery and "Games N'At" burglaries appeared to be the same, and the second "Games N'At" burglary occurred while Plaintiff was incarcerated provides a defense to these crimes for Plaintiff, it does not negate probable cause in the first instance. Plaintiff contests the reliability of the eyewitnesses' identification, which tends to be a defense to the crimes he was charged with and does not by itself disprove probable cause. *See Walker v. Spiller*, 54 F.Supp.2d 421, 426 (E.D.Pa. 1999) (quoting Romero, 45F.3d at 1477-78) ("A police officer's failure to investigate a suspect's alibi does not 'negate the probable cause for the warrantless arrest in the absence of showing that the [officer's] initial probable cause determination was itself unreasonable."); *Swope v. City of Pittsburgh*, ---, F.Supp.3d ---, ---, No. 2:14-CV-939, 2015 WL 500922, at *5 (W.D. Pa. Feb. 5, 2015) (rejected arguments against a finding of probable cause that were "more in the nature of a defense to those crimes rather than a basis for finding that [officer's] lacked probable cause in the first place.").

Unfortunately, while Plaintiff was ultimately found not guilty of the robbery, the Defendants had probable cause in the first instance to arrest Plaintiff. The Defendants "had no duty to continue to investigate before seeking an arrest warrant once they had probable cause to believe" Plaintiff committed the robbery. *Swope,* 2015 WL 500922, at *5. *See also Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (in making a probable cause determination, a court should concentrate on information available to officers at the time of the

arrest and "not on whether the information resulted from exemplary police work."). It is clear from Plaintiff's complaint that as a matter of law, the Defendants had probable cause to seek a warrant for Plaintiff's arrest and consequently, it is respectfully recommended that Plaintiff's claims for false arrest, false imprisonment and malicious prosecution be dismissed. *See accord Swope,* 2015 WL 500922, at *5.

    ii.    Conspiracy

Plaintiff brings a conspiracy claim against the individual officers claiming that these Defendants intended to unlawfully arrest and imprison Plaintiff and maliciously prosecute him by concealing and distorting the facts of the circumstances of the case and acted in concert with one another in doing so. The Defendants argue that this claim must be dismissed, because Plaintiff fails to adequately allege an express illicit agreement to violate Plaintiff's rights.

To "prevail on a conspiracy claim under [Section] 1983, a plaintiff must prove that persons acting under color of law conspired to deprive him of a federally protected right[.]" *Watson v. Sec'y of Pa. Dept. of Corr.*, 436 Fed.App'x 131, 137 (3d Cir. 2011) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) *superseded by statute on other grounds as stated in P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009). Because "the linchpin of a conspiracy claim is agreement, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a federally protected right." *Laurensau v. Folino*, 2012 WL 4508140, at *7-*9 (W.D.Pa. Sept. 28, 2012) (quoting *Watson*, 2011 WL 2678920, at *6; *Adee v. Beard*, 2012 WL 383622, at *7 (M.D.Pa. Feb. 6, 2012) (quotation marks omitted)).

To sufficiently set forth a conspiracy claim, a plaintiff must set forth facts alleging "(1) the conduct that violated the plaintiff's rights; (2) the time and place of the conduct, and (3) the identity of the officials responsible for the conduct." *Adee*, 2012 WL 383622, at *7 (citing *Oatess v. Sobolevitch*, 914 F.2d 428, 432 n. 8 (3d Cir. 1990)). Additionally, "[s]ufficiently particularized pleadings will include (1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose." *Houghton v. Dauphin Cnty. Emergency Mgmt. Agency*, 2007 WL 1200133, at *3 (M.D.Pa. April 20, 2007) (internal quotation marks and citations omitted).

Because Plaintiff failed to state a constitutional violation, as probable cause existed for his arrest, Plaintiff has failed to state a claim for conspiracy, as Defendants' conduct did not violate any constitutional right. Even if Plaintiff alleged a constitutional violation, he has not adequately alleged that Defendants plotted or planned and conspired together to effectuate his arrest. The facts as alleged show that Plaintiff was arrested based on eyewitness identification and not based on the officer's surreptitious plot or plan to arrest the Plaintiff for the PNC Bank robbery. It is therefore respectfully recommended that Plaintiff's conspiracy claim be dismissed.

### iii. Intentional Infliction of Emotional Distress

Plaintiff brings a claim for the tort of intentional infliction of emotional distress against the individual officer Defendants claiming that the illegal arrest, imprisonment and prosecution intended to inflict him with emotional distress. Defendants move to dismiss this claim, arguing that Plaintiff's claims fall short of the "outrageous" conduct necessary to state a claim for intentional infliction of emotional distress.

To bring a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: (1) extreme and outrageous conduct on behalf of the defendant; (2) that the

14

defendant's conduct was intentional or reckless; (3) that defendant's conduct caused emotional distress to plaintiff; and (4) that the emotional distress was severe.[4] Additionally, the plaintiff must alleged that he suffered some physical manifestation of "harm due to the defendant's outrageous conduct." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122-23 (Pa.Super.Ct. 2004). A defendant's conduct needs to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 754 (Pa.1998). With regard to a defendant's outrageous conduct,

> liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Kazatsky v. King David Mem'l Park, Inc.,* 515 Pa. 183, 527 A.2d 988, 991–92 (Pa.1987) (quoting Restatement (Second) of Torts § 46 cmt. D. (1965)). As for the outrageousness element, "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Swisher v. Pitz,* 868 A.2d 1228, 1231 (Pa.Super.Ct.2005) (citations omitted). "Police officers doing their job by arresting people when

---

[4] While the Pennsylvania Supreme Court has not expressly adopted the tort of intentional infliction of emotion distress, it has identified such a cause of action, and in doing so, has utilized the provisions of the Restatement (Second) of Torts § 46. *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000); *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 201 (Pa. Super. Ct. 2008) (while "[t]his tort . . . has never been explicitly recognized as a cause of action by our Pennsylvania Supreme Court, . . . the Supreme Court has cited a section as setting forth the minimum elements necessary to sustain such a cause of action."). Likewise, the Court of Appeals for the Third Circuit has "consistently predicted . . . that the Pennsylvania Supreme Court will ultimately recognize this tort[,] . . . and [will] generally follow the basic formulation of the tort found in [section] 46 of the Restatement (Second) of Torts." *Pavlik v. Lane Ltd./Tobacco Exporters Intern.*, 135 F.3d 876, 890 (3d Cir. 1998).

they have probable cause to do so certainly falls far short of extreme or outrageous conduct." *McIntosh v. Crist*, No. 3:13-CV-103, 2015 WL 418982, at *14 (W.D. Pa. Feb. 2, 2015) (quoting *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa.Cmwlth. 2010)).

Courts that have found that a claim existed for intentional infliction of emotional distress in connection with an arrest have done so where the plaintiff was physically injured by the officers, or where the officer's conduct was otherwise exceptionally reprehensible. *See McIntosh,* 2015 WL 418982, at *14 (officers used a Taser gun on plaintiffs multiple times after they were handcuffed and not resisting arrest); *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014) (excessive force claim where officers repeatedly struck Plaintiff on his face and upper body, used a Taser gun excessively and pistol-whipped him in the face with a Taser gun); *Valdetarro v. Vollrath*, No. CIV.A. 02-CV-2870, 2002 WL 32107615, at *4 (E.D. Pa. Dec. 24, 2002) (falsifying charges to obtain an arrest warrant); *Moser v. Bascelli*, 865 F. Supp. 249, 253 (E.D. Pa. 1994) (officer chased down and cornered a traffic violator and without cause or justification, fired three shots at plaintiff, striking him twice).

In the instant case, because Defendants had probable cause to arrest Plaintiff, their conduct falls far short of extreme and outrageous behavior. Even assuming the officers did not have probable cause to arrest Plaintiff, there are no allegations that the Defendants' conduct transcended all possible bounds of decency and should be regarded as utterly intolerable. There was no excessive force used in arresting Plaintiff, nor did Defendants falsify the charges against Plaintiff. While Defendants' police work in investigating the PNC robbery was less than exemplary, careless police work does not give rise to a cause of action for intentional infliction of emotional distress. Accordingly, it is respectfully recommended that Plaintiff's claim for intentional infliction of emotional distress be dismissed.

### iv. Municipal Liability

When suit is brought against a municipality for a constitutional violation under Section 1983, "the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. New York City*, 436 U.S. 658 (1978)). The City of Pittsburgh, as a municipal entity, "can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009) (citations omitted). Where, as here, plaintiff alleges that a municipal custom violates his constitutional rights, such a "course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." *Id*. at 658 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (additional citations omitted)). A municipal "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." *Id*. While a municipality can be liable under Section 1983 even if no individual officer violated the constitution, "for there to be municipal liability, there still must be a violation of plaintiff's constitutional rights." *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003).

Here, because the Defendant Officers had probable cause to arrest Plaintiff, Plaintiff's claim against the City must fail. Assuming *arguendo* that Defendant Officers did not have probable cause to arrest Plaintiff and his constitutional claims remained, he has failed to adequately allege that the City's failure to train its officers to investigate crimes is so customary

17

so as to virtually constitute law. Plaintiff cursorily alleges that the City failed to properly train, supervise and control its officers on the proper standards for investigation of crimes under these circumstances. However, Plaintiff does not allege any specific deficiency in the City's training, supervision or control of its officers besides pointing to his own circumstances and has not alleged a direct causal link between the City's failure to train its officers to investigate crimes and making arrests without probable cause. Accordingly, it is respectfully recommended that Plaintiff's municipal liability claim against the City be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants the City of Pittsburgh, Nicholas J. Bobbs and Antonio Ciummo's motion to dismiss [ECF No. 20] be granted and Plaintiff's complaint be dismissed.

In accordance with Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until <u>July 22, 2015</u> to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: July 7, 2015

                Respectfully submitted,

                <u>/s Robert C. Mitchell</u>
                ROBERT C. MITCHELL
                United States Magistrate Judge

cc: The Honorable Joy Flowers Conti
United States District Court
Western District of Pennsylvania

*Counsel for Plaintiff*
Joel S. Sansone, Esquire
Massimo A. Terzigni, Esquire
Law Offices of Joel Sansone
Three Gateway Center, Suite 1700
401 Liberty Avenue
Pittsburgh, PA 15222

*Counsel for Defendant City of Pittsburgh*
Lourdes Sanchez Ridge, Esquire
Michael E. Kennedy, Esquire
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219

*Counsel for Defendant Nicholas J. Bobbs and Antonio Ciummo*
Bryan Campbell, Esquire
Allison N. Genard, Esquire
330 Grant Street
Suite 2330
Pittsburgh, PA 15219